Morning, counsel. Good morning. May it please the court, my name is Aaron Welling, appearing for the appellant, Mr. Philip Lyons. I'd like to use 11 minutes now and save 4 minutes for rebuttal. Please just watch the clock. Thank you, your honor. I plan to focus today on two of the court's evidentiary rulings, specifically the ruling regarding the relevance of the use of force and the relevance of the chilling effect of that force. Secondly, I hope to discuss jury instructions 17 and 18. Mr. Philip Lyons, a prisoner of the state of Nevada, filed a grievance, and in response and in retaliation for filing that grievance, a team of corrections officers came to his cell and demanded to know which inmate was filing the grievances. When Mr. Lyons admitted that he was the one filing the grievance, that team of corrections officers swarmed Mr. Lyons' cell, piled on top of him, manhandled him into a set of restraints, and then rushed him into a room out of eyeshot and earshot of the other inmates where they verbally berated him, and then issued the warning to write no more grievances. At trial, when Mr. Lyons was on the stand testifying about the rough and intimidating nature of the corrections officers coming into his cell after he had filed his grievance, there was an objection from opposing counsel arguing that the testimony was irrelevant and requesting a sidebar. The judge denied the request for a sidebar, but in open court ruled that the evidence Mr. Lyons was submitting about the rough and physical nature of this visit from the corrections officers was not relevant to his retaliation claim, and this judge went further to state that legally this information was immaterial to the claim. This was based, I gather, on our court's ruling that this was not excessive force, right? There are indications in the record that what had happened was the judge had misconstrued this court's earlier order dismissing a separate excessive force, or upholding summary judgment on a separate excessive force claim while remanding on the retaliation claim. That's correct, Your Honor. Later, as Mr. Lyons continued to offer testimony during trial, he was describing the demeanor of the prison guards, their facial expressions, trying to describe how it was that the conduct of these guards chilled the exercise of his First Amendment right. And this time, without an objection from opposing counsel, the judge interjected and interrupted Mr. Lyons to state that this evidence wasn't relevant to his claim. So the point I want to make here, too, is, you know, why were these evidentiary rulings wrong, and how did they harm or prejudice Mr. Lyons' case to the point that a new trial is required? So how these evidentiary rulings are wrong, that issue is relatively straightforward. Obviously, evidence concerning the physical force that these guards were using is directly probative as to whether the defendant's conduct was retaliatory, which is the central issue of this case. So how is it that those evidentiary rulings harmed or prejudiced Mr. Lyons? And the answer there is that these evidentiary rulings completely hamstrung Mr. Lyons' ability to prove the elements of a retaliation claim to the jury in this case. If you — I gather since there was some evidence introduced about harm, you're really talking about the quantum and nature of it, I gather, in order to meet the Rhodes v. Robinson standard. And I quote, whether the adverse action would, in quotes, chill or silence a person of ordinary firmness for future First Amendment activities. Is that right? That's exactly right, Your Honor. That's a very insightful question. So what — there's a big difference when you're talking about the defendant's adverse conduct and the chilling effect of that conduct between merely shouting at an inmate and telling him, write no more grievances. That's one thing. It's an entirely different matter to come into his cell with the show of force, step on him, manhandle him, you know, send a message that, you know, we can hurt you if you file any more grievances. And Your Honor's keyed in on this, that goes directly at the chilling nature of the adverse conduct on the part of the defendants here. That conduct backed by the threat of physical force and the application of physical force is far more likely to chill further protected conduct. Counsel, didn't the jury, though, hear evidence of some of the force used against your client? That's correct, Your Honor. The Pelley's in their brief do point out that the jury basically got the gist of this, that there are breadcrumbs in the record that the jury could have put together and fairly inferred that, you know, some force was used against Mr. Lyons. But I think that argument fails here for at least two reasons. First of all, you had the judge stating in open court and in the presence of the jury that this evidence was irrelevant. And we have to presume that the jury listened to the judge when he said that and in their deliberations didn't weigh this use of physical force. And the verdict that the jury ultimately reached supports that conclusion, that the jury listened to the judge. Secondly, when we're talking about the prejudice that Mr. Lyons has to endure as a result of these evidentiary rulings, the burden shifts to the appellees on appeal. There's a presumption of prejudice, and it's up to the appellees to prove that the jury verdict in this instance was not tainted. And for the same reason I can't stand up here and guarantee to this court that the jury followed the judge's counsel in their deliberations and it didn't weigh the physical force when they were deciding this case, for the same reasons I can't do that, the appellees can't get up here and argue the other side of the coin. They can't overcome that burden by arguing that the jury disregarded the judge's comment because they don't know that. Moving on to jury instruction 17 and 18 and how it was that the issuance of these two jury instructions prejudiced Mr. Lyons' case. If one of the uncontroverted facts at trial was that Mr. Lyons was engaging in filing grievances, it was uncontroverted, and we have clear Ninth Circuit authority that filing grievances is protected conduct under the First Amendment. And if you look at the first element of a retaliation claim, the first element is, was the plaintiff engaging in protected conduct? And when you read jury instruction 17 and 18 in the context of the other instructions, specifically jury instruction 22, it becomes clear that jury instruction 17 and 18 would have misled the jury and made it very clear that the plaintiff was engaging in protected conduct. It was very difficult for them to find for Mr. Lyons on the first element of that retaliation claim, and it really should have been kind of a no-brainer for the jury. So let me explain what I mean. If you look at jury instruction 22, jury instruction 22 states that the first element of a retaliation claim is whether the retaliated against First Amendment conduct is protected. And in this case and on this record, the only potential protected conduct at issue was the filing of grievances. And so that sends the jury looking at the other instructions, and the only other jury instructions that we had here, 17 and 18, that can or the only in jury or excuse me, let me back up. The only jury instructions that the jury had that discussed grievances in the context of a constitutional right were jury instructions 17 and 18. And so then you take a look at jury instruction 17 and 18, and you see that each of these instructions contains, you know, a half-truth and then a misstatement of the law. Jury instruction 17 states that a prisoner has a right to petition the government for redress of grievances, which is, of course, correct. But then it goes on to state that a prisoner does not have a constitutional right to a particular grievance procedure, which is a misstatement of law. Jury instruction 18 is similar. It begins by stating that, you know... Why is that a misstatement of the law, just as a straight statement? Isn't that exactly in accordance with Ninth Circuit and Supreme Court law? Well, there are cases, many, many cases, that afford states and prisons wide-ranging discretion in formulating their grievance procedure. But once they pick a grievance procedure and it's in place and a prison says, this is the grievance procedure we're going with, inmates do have a constitutional right to that particular grievance procedure. That's a different issue, is it not, than the one you're talking about? In the context of these instructions, and you have to read them together, no. Let me ask you this. It seems to me that your biggest, most important claim is the conduct of the judge. Whatever the jury derived from the issues with 17, 18, 22, 24 was nothing compared to the judge constantly saying, no, you can't talk about it, you can't talk about that, you can't talk about that. That's really powerful stuff. I assume that's what you want us to focus on as opposed to the jury. Not that you're wrong about jury instructions, but isn't that your best argument? It is, Your Honor. No doubt about it. And I'd like to reserve the remainder of my time for rebuttal. Good morning. Good morning, Your Honors. May it please the Court. My name is Lawrence Van Dyke, and I represent the defendants' appellees in this case. And I think, Your Honor, I'll start with, since it seems like the Court's most interested in this argument that Lyons should have been allowed to testify more about the officer's use of force. I think it's important, two things. One is, to step back a little bit, and the State actually asked for several motions in limine in this case, but it asked for two that are relevant to this claim. First of all, the State said, because of the Ninth Circuit dismissing the excessive force claim, they asked for a motion in limine keeping Lyons from being able to testify at all about the cell extraction. So what the State wanted, and I actually think the State was probably correct in this regard, but what the State wanted was for Lyons not to be able to talk about all of this stuff that happened in the cell extraction. And the district court — Do you agree, counsel, that there is a difference between excessive force and the First Amendment retaliation claim? I think that I suppose in some instances there could be. I think what happened in this case, Your Honor, I think what happened here, is you have a district court judge, who has — you know, the district court judge, Mann, and then the Ninth Circuit upheld his decision. The district court judge dismissed the excessive force claim, and if you look at why he did, if you look back at the magistrate's report that the district court judge accepted in its entirety, the reason that he dismissed the excessive force claim was because all of the things that Lyons complained about in the excessive force claim, the being forced to lay on the floor and put his arms behind his back and having a knee in his back, and all of the things that Lyons complained about in the excessive force claim, and putting on cuffs tightly, all of those things the court concluded were supported by legitimate penological reasons. That is the reason why the court dismissed the excessive force claim. And so — and that's why I think it's really important to understand what the district court did here, because it's a little bit confused, I think, by the way — by the way it's been presented by Lyons on appeal. The court was asked by the defendants to — by the defendants to exclude all evidence of the cell extraction. The court denied that motion in limine, and that is why — it's not like these, you know, to use this phrase, breadcrumbs, it's not like these breadcrumbs snuck in despite the court — the district court's trying to keep everything out. The truth is, is that the State tried to keep out the entirety of the cell extraction in the motion in limine. The district court denied that, and then the district court — and that's why the district court allowed in so much testimony. If you look, and we talk about it in our brief on pages 34 to 37, we reiterate all the different testimony that came in. Lyons and his cellmate both got to testify at length about all of the different aspects of the cell extraction. In fact, reading Lyons' reply, it's not clear to me what he thinks as far as actions that happened should have been able to come in that did not come in. But the district court did grant, and this is the motion in limine that Lyons points to, they did grant, it did grant a more limited motion just to prevent Lyons from effectively, quote, relitigating the excessive force issue. So essentially what the court did is you can talk all you want about what happened. What you cannot do is you cannot try to portray that as somehow being undue force, as somehow not being related to legitimate penalogical reasons, because that had already been decided in this case. Let me ask you this. Let's assume that the guy that extracted him from the jail was Dr. No. You remember from the James Bond movie, and he brings him there, doesn't say much, but he looks right at him and he says, you SOB, if you say anything else again, I will kill you. I will kill you. Now, excessive force, absolutely, clearly illegal, but based upon what the court did here, would that kind of testimony have ever been permitted? I guess I'm not quite understanding. That threat, Your Honor, would not be supported by legitimate penalogical reasons, I don't think, in the hypothetical. But I guess what I'm struggling with here is that if I understand the plaintiff's complaint, they're saying, hey, you know, what happened here, the way it happened, the excess involved, it wasn't so much the excessive force, it's the way it was done that was the threat to my complaining that was the issue. And we have to determine whether it is of such a nature that a person of, in quotes, ordinary firmness could withstand the threat. In other words, if you make any more complaints, then you're in big trouble. So maybe the way in which it's said, maybe the eye contact, you know, the Dr. No approach to things, I'm having difficulty seeing how to separate these two. The court's ruled on excessive force, but there is something different than excessive force, which is, was what was done, done in a way that a person of ordinary firmness would have been unable to withstand that pressure. And, Your Honor, I think that's exactly why I suppose it's, you know, this theoretical question of is there some sort of play in the joints between excessive force at one level and what would constitute something that would overcome a person of ordinary firmness. In theory, I suppose that's an interesting question. In the context of this case, we have a district court judge, a district court judge that is exercising his Rule 403 discretion. And, you know, as you know, district court judges get a lot of deference for, and the reason they do is very relevant to this case, and that is because district court judges, they look at things in the context of a case. And here he's got a case that he's dismissed excessive force claim, and the reasons he's dismissed excessive force claim is that he has decided, and the magistrate judge decided, and the Ninth Circuit upheld, that these certain particular actions were not undue force, but the reason they were not undue force is because they were supported by legitimate penalogical reasons. Now, but he, so the State says, okay, good, you know, you've said that, so now you can't talk about those actions at all. But that's not what the district court judge did here. The district court judge said, no, he denied that motion to eliminate. He said, you can talk about those actions all you want. You can try to convince the jury that these actions would overcome a person of ordinary firmness. But what you can't, the only thing he said you cannot do, and if you look in the record on page 63 of the excerpts of record, the witness is going on and on. Well, they started grabbing my legs, and they grabbed my arms. They're stretching them out. I let my body go limp. All this aggression. I didn't want to show any signs of it. And he goes on and on. The district court judge did not interrupt him. The State, because it had had its motion eliminate denied about this not having this come in, did not object until, if you look, what he said is, and they put the handcuffs on as tight as they could possibly get. So what you've got is you've got a district court judge who's trying to figure out where do I draw the line under his Rule 403 discretion? Where do I draw the line that letting the jury, and this is really important, the five-part standard for a First Amendment retaliation claim has two elements that are critically important to this case, and that is that, A, the plaintiff has to prove, has the burden to prove that the adverse action was taken, quote, because of a retaliatory reason. And the other thing that they have to show under this five-part standard of Ramirez or Rhoades and Watterson is that it does not reasonably advance legitimate penological interest. Well, in dismissing the retaliation or the excessive force claim, they did it because they decided these actions have a legitimate penological interest. So you've got a judge saying, you know, we've got actions that have already been determined to have legitimate penological interest, but he wants to be able to testify and use those for a First Amendment retaliation claim. Will that unduly prejudice the defendant? Will that be confusing to the jury? And the judge, in exercising his 403 discretion, drew the line, I think, at a very reasonable line. I personally would have drawn the line and said none of it comes in. Apparently you may not be comfortable with that. But he drew the line and he said, I'm going to let the, I'm going to let come in all the actions. You can testify all you want about the actions, but you cannot characterize those actions as being an excessive level of force. And that's, if you follow on from 603. The counsel, is this a case where you kind of have the irresistible force meets the immovable object, that they want to show that what was done was such that it would overcome a person's willpower. You want to be sure that nothing is said that would meet that because it has a legitimate penological interest, and there you just struggle with it, right? That's what I'd like to say, but for the record, that's not what the district court did. The district court said, you know, I'm going to let all of that come in. I'm only going to draw the line that you cannot talk about it being an excessive level of force. And he said use of force. If you read on page 64, the judge in 65, he says over and over again, he says the use of force, the use of force, the use of force, his claim is no longer in. And so he drew the line. And I think it's very important to realize that this was a, this is a judge exercising his 403 discretion. He had two different sort of interests here. He has the interest in not unduly prejudicing the defendants by allowing something that has already been determined to be a legitimate penological purpose somehow be used by the jury as not a legitimate penological purpose, right, because they'd have to, that would be something they'd have to show under the five-part standard. On the other hand, he doesn't want to confuse the jury. And so he drew the line, I think, in a very, I think in a very defensible place. But, of course, you don't have to think it was in a very defensible place to uphold, to uphold him on this. You just have to think that he did not clearly abuse his discretion. You don't have to, in other words, it doesn't have to be the line that you would have drawn, but I think it's a very defensible line. He says it's not, and that's what I want to make very clear to the Court this morning, is this is not a case where the judge has decided none of this is going to come in and some of it snuck in anyway. This is a case where the judge deliberately allowed all of it to come in, except for, except for the very small issue of Lyons being able to testify that it was an unreasonable or excessive use of force. And that's, if you look at page 63, it isn't until Lyons says that he put on the handcuffs as tight as they could possibly get. And that's where the judge drew the line. And so I think it's very important to the, one final point. Breyer. Counsel, does it matter, though, the judge didn't just draw the line. The judge was very clear in admonishing the witness. This isn't relevant. It's not relevant, given the impression that all the proceeding testimony wasn't relevant. Well, I think part of that, Your Honor, is if you read, if you read through the, through the transcript, I mean, this is a witness who would, he asked the witness, if you look, he says, he says it's not in there. And then the witness argues with him. The witness says, he says, he says, that was the, he says the use of force claim is no longer part of the lawsuit. And the witness says, well, that is the adverse action on page 65. So the reason that he says this in front of the jury like this is because the witness was not, I mean, again, this is the type of thing that I think district court judges should get lots of discretion in trying. This witness is basically trying to talk over the judge during the proceedings. So that's why the judge is forced to tell, answer the witness. And the witness says, he says, it's not relevant. And the witness says, the use of force. And he uses the words use of force. The use of force, the level of force is not relevant. And the witness comes back and says, yes, it is. And the judge has to say, no, it's not. You know, he asked it, and so, and the witness keeps looking. You read the transcript and it sounds like the witness is running the proceedings, not his lawyer. So I encourage you to do it. So I, again, the last thing I would say is the cases that are cited by plaintiff in their brief on page 15 of their brief and then in their reply brief, Watteson, Rhoades, Blair, they don't have any cases for the idea that conduct that was not an excessive use of force can somehow become an excessive use of force, that is not, could not be excessive force, could somehow be used, or that conduct that had, that has already been determined to have a legitimate penological purpose can somehow be used to meet a first, can be thrown into the mix for a First Amendment retaliation claim. I think it is very troubling. I think this goes to a question, Judge Fernandez, or Judge Smith, that you asked earlier. And I think it is very troubling. I do think it's a very difficult line to draw. How do you allow conduct that has a legitimate penological purpose? Like, how do you allow conduct of somebody being locked in a room, for instance, which happens all the time in prisons, which for us would be an adverse action, would chill a person of ordinary firmness for us. But you imagine a situation where a court would determine that a particular action was part of a penological purpose and that there could still be a First Amendment protected right to complain? I think that's a very, you know, we talked about this at length in our office, Your Honor. I think that's a very troubling, you know, basically you could say, well, you can put cuffs on people to move them, obviously supported by a legitimate penological purpose, but if you do it in the wrong context, it somehow becomes part of the mix and a jury can take that into account for a, for a retaliation claim. I think that's a very troubling concept. Again, I would reiterate, Your Honor, that you don't have to, you know, whatever line the judge drew in this case does not have to be your line. It just needs to be a line that's not an abuse of discretion. It's not a clear error. That's the standard here. And I think it's very important because of the standard in this case. I do want to make sure that I address any other issues if, if there's any of the other, you know, Lieutenant Powell's testimony, the instructions. And I guess the one last thing I'd say about the Instruction 24 that I think they make a big deal out of the lines, makes a big deal out of the clearly adverse statement, if you guys recall from the, nothing I don't think in this case turns any difference between adverse and clearly adverse. They use clearly like it somehow modifies adverse to make it like a more intense type of adversity, but that's not what clearly means. I've probably said clearly two or three times in this argument, and when I say clearly, I mean obvious. That's what clearly means. And I don't think if you accept Lyons' version of what happened here, you know, he told, got to tell the jury all these bad things happened to him. He got yelled at. He got cussed at. He got, the jury did not walk away thinking, boy, I wonder if that was clearly adverse or not. Maybe it was just adverse, not clear. The jury walked away not believing Mr. Lyons, and that's why he lost in this case, Your Honors. And I would submit that, I would ask the Court to take this decade-old case and let it finish. Thank you, Your Honor. One more thing. Do you believe that basically that Mr. Lyons presented all that he really could have to the jury? In other words, he got his whole story in already despite what the judge said and despite what the instructions say? Absolutely, Your Honor, with the exception of, the only exception to that is that he was not allowed by the judge, more than he did, more than he was able to get away with, he was not allowed to characterize the force as somehow being beyond that, beyond that allowed by the general penal logical reasons. But as far as like what actually happened, the whole story, consistent with the motion eliminated that the judge had issued, absolutely. He did, he was able to get everything in. And in fact, I don't see anything in the reply brief as far as actions that were  Thank you, Your Honor. Thank you. Okay, we'll hear rebuttal. Before you get started on what I'm sure is a well-prepared response, let me just ask you what, and let me know what's in the record, what more could your client have said about what occurred to him than he did? If you look back at Mr. Lyons' complaint and Mr. Lyons, excerpts of Mr. Lyons' deposition testimony that are attached to the defendant's motion for summary judgment, which are both part of the excerpts of record, and I apologize, I don't have the page numbers, there, when Mr. Lyons was lying on the ground with his hands cuffed behind his back, he describes how the officers picked him up by his wrists, exerting pressure on the shoulder joints in what would have been very severe and very painful. And that did not come in from your perspective? And that did not, the jury did not hear about that at trial. Anything else?  So basically, except for being pulled up when his hands were behind his back, being pulled up very painfully, he got all of the rest of his story, what happened to the jury. Admittedly, the judge was characterizing it in a way that you disagree with, but the jury heard what your client wanted to tell him, except for that one thing. Is that right? I don't know if that's necessarily the case. I would want to go back and review Mr. Lyons' deposition testimony one more time before I commit it. At least at the present time, that's what you can recall, right? That's correct. Okay. And it's really not about what came in and what the jury heard and what didn't. It's about the statements of the judge, you know, in open court to the jury, to the parties, that, hey, what you're hearing is not relevant to this retaliation claim when, in fact, it was. There was a lot of discussion of the court's motion in limine, which is at ER 363. Now, if you look at that motion in limine, what you see, what the court really had decided to do was permit testimony and evidence regarding plaintiff's removal from his cell. And, you know, if plaintiff chooses to testify and provides testimony as to the rough nature of that conduct, you know, the defendants could object and seek an instruction that the conduct was not excessive. How do you respond to opposing counsel's comment that far from being abusive to their client, the judge bent over backwards to let him do what the State did not want him to do, which was to testify about anything of what happened to him and that we should review this under an abusive discretion standard? Any comment on that? I guess I would comment that that's — this was not a case where — and the record we have, this is not a case where the judge did that 401, 403 balancing, and he said, you know, even though there's the threat of prejudice here, I'm still going to let Mr. Lyons, you know, talk about this conduct. That's not what happened on the record. If you look at the trial transcripts, the judge said this was not an example of the judge bending over backwards and accommodating Mr. Lyons. He — you know, he states in open court to the jury and to the parties, this information is immaterial to the claim. It shouldn't be considered. Thank you very much. Any questions that my colleagues have? Thank you very much. Thank you. All of both of you for your argument. The case just argued is submitted.
judges: Fernandez, M. Smith, Morris